For more than a century, Congress has made it a crime to encourage or induce certain immigration offenses. Mr. Hansen violated that statute by inducing non-citizens to reside in the United States illegally so that he could take their money in a fraudulent citizenship scheme. No one suggests that that conduct was protected by the First Amendment, but the Ninth Circuit invoked the overbreadth doctrine to facially invalidate this long-standing statute by giving the words encourage and induce their broadest possible meaning and sweeping in wide swaths of protected speech. We haven't argued that the statute would be constitutional if it swept that broadly. Our position here is that the statute need not and should not be read that way. Everyone agrees that in criminal law, the terms encourage and induce are terms of art that can refer narrowly to soliciting or aiding and abetting unlawful activity. And as nine dissenting judges explained below, text, context, and history confirm that the words carry that traditional meaning in the context of Section 1324. At the very least, that's a plausible reading of the statute that ought to be adopted under the canon of constitutional avoidance because it would eliminate any overbreadth concern. Prohibitions on soliciting or facilitating both criminal and civil violations have long been common and have never been thought to raise a First Amendment problem because, as the court held in Williams, the First Amendment does not protect speech that is intended to induce or commence specific illegal activities. Now, I acknowledge that it will sometimes be hard to draw the line between protected advocacy and unprotected solicitation, but that problem is not unique to Section 1324. Exactly the same issue can arise under any solicitation or aiding and abetting statute. And more importantly here, that is not an overbreadth problem. As with other solicitation and aiding and abetting statutes, the possibility that some applications of Section 1324 might raise First Amendment questions may provide a basis for future as-applied challenges, but it does not justify facially invalidating the statute and preventing its application to plainly unprotected schemes like Mr. Hansen's. I welcome the Court's questions. Are you aware of any instance in which this section has been applied in the way that the Ninth Circuit hypothesized? I'm not. And I really do think that's significant, Justice Thomas. We are, after all, here on an overbreadth case, and this Court has emphasized most recently in the last time I've heard this issue in Senating Smith that overbreadth is strong medicine that ought to be applied only as a last resort, and it's said you have to vigorously enforce the limits on that doctrine. Sorry. There's a district court case involving the woman who encouraged her housekeeper or told her if you leave, you can't come back, which was an accurate statement of the law, and she was prosecuted in that case? Justice Sotomayor, you're referring to the Henderson case out of Massachusetts, which is the case that the amicus briefs focus almost entirely on, and I think even if you were to be one district court prosecution, I don't think five of them are going to be enough. Well, what I find interesting is that the government there also hypothesized that a lawyer who told his client what the consequences were of leaving, that you would prosecute the lawyer, too, and a lawyer there is earning money for that statement. He's giving advice. I'm not sure whether that's what the government said there. It's certainly not what we're saying now, as we explain it. Well, I know you are. But could you tell me exactly how you want us to rewrite the statute? I think, if you're going to call it aiding and abetting or soliciting, that you have to write in a specific intent, don't you? I wouldn't. I'd just dispute the premise. I don't think we're asking you to rewrite it. I think we're saying these are words that connote aiding and abetting. They're terms of art. They bring the old soil with them. With it, and that's an intent requirement. Correct. And here, the defendant asked for an intent statute to come in. Not quite. The intent requirement that's required for aiding and abetting, the one that we accept here is the one the court referred to in Rosemont. That's the intent of facilitating making the offense succeed. What the defendant asked for here... Well, with aiding and abetting, you have to intend to make it succeed, and I'm wondering what you're making succeed, meaning nothing. You haven't proven that these aliens were going to leave anyway. I actually think we have here. There was testimony that there were two non-citizens at issue. Both of them said their visas were expiring. They would have left, but Mr. Hampton said, you can stay because I'm going to make you a citizen. Right. But, so we have to write in an intent. We have to take the words and define the words encourage or inducing to mean aiding and abetting or soliciting. What do we do with our aloneness point where we said, if we're going to define a statute, we shouldn't define it to put in words that Congress took out, and Congress previous to this statute had the words aiding and abetting and soliciting and took them out, so now we're putting back in what Congress took out? I disagree, Justice Sotomayor. I think this is an area of the law where commentators and the court has long recognized there are lots of different words that have overlapping meanings that legislatures and courts use to capture these concepts of solicitation and aiding and abetting. The Lefebvre Treatise cites about a dozen of each species, induce and encourage are among them both, and I don't think that the fact that Congress took out assist and solicit in 1952 suggests that it intended to change the meaning of this word. It was, in fact, adopting the shorthand that this court had just five years earlier in the Hoy case given to the predecessor statute. When the other words were in there, this court shorthanded it as encouraging or inducing. You agree, though, that the intent requirement that's traditionally associated with aiding and abetting and solicitation should be part of the statute, correct? We do, and we just don't think that's rewriting. If you look at 18 U.S.C. 2, the statute issued in Rosemont, the traditional aiding and abetting statute, it doesn't have any explicit intent requirement to judge hand, and then this court found it implicit in words like induce, and we're saying the same old soil comes with those same words where they appear here. And then I think you probably do have a problem on the jury instructions. Do you want us to remand and let the Ninth Circuit sort that out? Or what's your suggestion for how to deal with that? We do. We think that's appropriate. We don't think the jury instructions are before you. What's before you is an overbreadth challenge, and part of that, of course, is figuring out what the statute means. Once you do that, we don't have any objection at all to sending it back to the Ninth Circuit. Mr. Fletcher, suppose we take your view of what encourage and induce means here, and we take your view of the correct mens rea requirement, and suppose we say that's the  What happens to all the cases where it could be a lawyer, it could be a doctor, it could be a neighbor, it could be a friend, it could be a teacher, it could be anybody, says to a non-citizen, I really think you should stay. What happens to that world of cases? So I think our view is those cases get analyzed the same way that you'd analyze any other aiding and abetting question or solicitation question under any other statute. And I'll talk about how that we think those principles cash out as applied to all of the different hypotheticals that have been bandied about. But I think at the end of the day, the most important thing for this court's purposes is once you go, you take the two steps that you just described of saying that the boards mean what we say they mean and that the intent requirement applies. I think you've taken care of any arguable overbreadth problem. Well, maybe or maybe not. I mean, I would think that there are a world of communications that take place every day, which are something along those lines with somebody saying to a non-citizen, I know you're thinking of what you should do now. I really think you should stay. So just to fight the premise, and then I'll talk about how we think the principles would apply in those circumstances, you know, the traditional aiding and abetting solicitation statutes apply to tax avoidance, to the use of marijuana, to avoiding the drafts back when that was an issue. In all of those circumstances, you likewise have to draw the line. There's a lot of abstract advocacy on those things. People talk with their friends and acquaintances and families. So where do we where do we draw the line? You're not giving me much. Sorry, I promised I would get there and I will. I think you apply the traditional principles of aiding and abetting. So one of them is specific intent that the violation occur. I think that's going to weed out. Yeah, I really think you should stay, somebody says to a friend. Right. I mean, that's a specific intent, I guess. Right. Another one is your full knowledge of the circumstances and that in this statute includes additionally some knowledge of the law, knowledge or reckless disregard of whether or not staying is going to violate the law. I think that's going to take care of another category of cases. There's also a requirement that's always been understood to be implicit in general advocacy, a newspaper editorial, general advocacy, public speeches. We're talking about specific conduct with specific people. I think that takes care of another slice of cases. And then you're left with the cases that, well, I'll candidly acknowledge are the hardest hypotheticals where somebody says to a family member, I know it would be unlawful for you to stay, but I think you should stay. Those are a hard problem under aiding and abetting statutes. There's not a lot of law on how you end up cashing out aiding and abetting principles there. The closest we find is in footnote 55 of section 13.2 of the LaFave Treatise, which we cite in our opening brief. And there the court has said, look, when you're talking about aid and the form takes material of aiding and abetting takes material aid, as you said, for the court in Rosemond, any amount of aid is enough. You've associated with the venture you've sought to facilitate it, and that's good enough. When what you're talking about is just sort of moral suasion or a request that can sometimes be aiding and abetting. Recruiting someone to commit a murder is a classic case of aiding and abetting. But we want to demand a little bit more to make sure that you really did associate yourself with the venture. You really did seek to facilitate it with your request. So do I understand you to be drawing a line between a friend who says, I know exactly what the law is on this and I really think you should stay, which would be in violation of the law. That's on one side of the line. And saying that exact same thing and saying, also, I'm going to provide you support when you say is that is that the line you're drawing? And not precisely, I think, saying, you know, I'm going to provide you support. I'm going to tell you how to do it. Here's how to work without being on the books. I think those things start to move you much more into assistance. But but on the first one where there's not that, do I take you to be saying, well, this is very hard. But in the end, we don't think that that's covered by the statute. So we do think that that's covered by the statute. I think it's hard to say that that's covered. I've read a lot of aiding and abetting cases to get ready for this argument. I haven't seen one that looks like that. You know, the mother who says to the son, gee, I don't want you to Mr. Fletcher. That's because I think that in aiding and abetting, you not only need a mens rea purpose, you know, we talked about that. You conceded that. But you also have to have an actus reus of some step to associate yourself with a venture, but encourage and induce or incite whatever it is, encourage and induce. Is that does that report that actus reus requirement, too? I think it does. And I think the actus reus for aiding and abetting can be speech. It can be a request, you know, would you rob this bank and I'll give you we'll split the proceeds or, you know, I really would like you to kill this business associate of mine and I'll pay you if you do it. All of those things are speech in some sense. But it's a commitment to do something in the world. And, you know, it's obviously in court offense, but it's still I'm going to take some step to associate myself with the completion of this venture. Right. And are you saying that comes along, that soil comes along to we're saying the soil of aiding and abetting comes along the full soil, all of it. Yes. I'm sorry. Why? Why does the full soil come along? I'd like to go back to Justice Sotomayor's point. If we have evidence or we think we do in the amendment history of the statute that the statute, similar concepts, the idea of, you know, aiding the idea, I don't have the exact language in front of me, but soliciting, soliciting was there and Congress took it out. So I think you are struggling, at least in my mind, a little bit to have us read what remains to include the kinds of things that Congress actually excluded. So let me give you two answers, one that's about this area of law in general and one that's specific to the 1952 amendment that you're talking about. As to this area of the law in general, this is a space where courts and legislatures have often used different words as synonyms for the same basic concept. In 18 U.S.C. 2, it's not just aids and abets, it's aids, abets, induces, commands. There's about seven different words. No one parses them out and asks which exactly is it. We all understand them to bring along the concept. But what about what about the fact that someone in Congress thought that they needed to take out those other words? So you might be right that there are all kinds of synonyms floating out there. And if this statute had all of them, I might be persuaded, I think, to agree with you. But I guess I'm worried about an active, conscious effort on Congress's part to exclude certain words that I now hear you wanting us to read back into this statute. So I think maybe if there was any reason to think in the legislative history, in the context that Congress intended to do that, that the reason why they wanted to do that was that they wanted to not make it a solicitation or aid and abetting statute, which I think we all basically agree it was before. And they wanted to turn it into something else. Do you have a theory of why they took out solicits? I do. I think one of them is just economy. As I said earlier, this court just five years earlier in Hoy had described the prior statute as induces or encourages. So Congress was just using a more concise formulation that mirrored what this court had used for the prior statute. And I guess the other thing I'd say is, you know, I think the context I think matters here, too. This is what respondents in the Ninth Circuit are positing Congress did in 1952 was really something extraordinary. They took the statute that had always been focused on soliciting and aiding and abetting and transformed it into a really very broad ban on speech that would be obviously unconstitutional in many of its applications. And I don't think the court should lightly attribute that intent to Congress. And I think also it's significant that after 1952, we have decades more of history. Congress revisited the statute again in 1986 and kept the induces or encourages language, but otherwise tweaked the statute and then revisited it again in 1996 and changed the penalty. What about such? Go ahead. I have two questions. One is kind of focusing on a different part of the statutory language. Is there a difference between presides and remains because they appear in different sections and it seems to me like resides could mean take up residence in, which might be different than remains. So I think I've puzzled over this, too. I think I'm not sure if there's any difference in them. I think if I take up residence and you're referring to the interpretation that Judge Collins floated in his dissent, where it suggested encouraging someone to reside in might mean take up residence for the first time and not continue on lawful residence. The reason why I don't think that works is because of the description that the statute has of the mens rea. It says knowing that the person's coming to or residing in the United States is or will be unlawful. And I think that suggests that Congress understood that you could violate the statute by encouraging someone to continue residence that is already unlawful. I'm not. I'm sorry. No, no, no. And my second question is about the effect of the enhancement. So a jury has to find the elements of the enhancement. Correct. OK. So and thinking about this is an over breadth challenge. I mean, obviously, the substance of offense itself could standing alone in a situation where the penalty or the enhancement wasn't applicable. Let's just have it that maybe that violates the First Amendment and fails in an over breadth challenge. You say there's no evidence for someone bringing an over breadth challenge in a situation like this where you can combine it with the enhancement that requires the financial gain. So I just want to be sure that's right. That's right. That's right. Right. We don't have we haven't seen any precedent for an over breadth challenge like that. And we don't think allowing the extension of over breadth to that sort of challenge is consistent with the principles of over breadth, which include that if there's a way to sever invalid parts of the statute and leave the rest, courts ought to do that. And we think that's exactly what's true here. Even if you thought, as your question posits, that the general offense is potentially over broad. I don't think that would mean that the enhanced offense is over broad. It's a severable class of offense. Wait a minute here. The enhanced offense includes the first part. That's when you say the first part is invalid and still keep a second part. The second part says you did the the second part says you did the first part for money. Correct. You have to define what the first part permits or doesn't permit. Correct. You always have to go to the first part and define it. Correct. And what I'm positing is that even if you thought, and we obviously disagree, but even if you thought that the general offense is unconstitutionally over broad and therefore potentially invalid, the subset of that offense that is defined by the enhanced offense, you could invalidate other applications of the general provision. But there would be no reason to invalidate the subset of applications of the general provision that also carry this enhancement, which has to be found. You still have to prove that what the lawyer did was aiding and abetting or solicitation. That's our view of what we would have to prove under any of that. Mr. Fletcher, an unusual feature of this statute is that the underlying conduct remaining in the United States is not itself a crime. And I can certainly understand that there are situations in which urging someone to engage in certain conduct is more blameworthy than engaging in the conduct itself, because the person who engages in the conduct may be in a particularly vulnerable position or may be less blameworthy for some other purpose. But is there some limitation on, does the First Amendment in any way limit the ability of Congress to criminalize the solicitation of conduct that is not itself criminal? We could think of conduct that regulatory violations, for example, of speech requirements, speech requirements, regulatory provisions that limit speech in some way. Would the First Amendment allow Congress to make all of urging somebody to engage in that conduct a crime under all circumstances? I think there'd be a couple of principles that would come into play. I'll tell you first handedly, I don't think the court has ever spoken to that. To the extent the court has spoken to this issue, it's done in cases like Williams and Pittsburgh Press, where it said that offers to engage in or attempts to solicit or induce illegal transactions, even if they're only civilly prohibited, are just outside the protection of the First Amendment. I think so to say anything beyond that would be new. I think the things that principles that might come into play, I can conceive of if you had a law that targeted just speech, that didn't target assistive or soliciting conduct, there might be different issues that would come into play. That's not a concern here because everyone agrees that this statute gets it encouraging and inducing whether that happens through speech or conduct. And I could imagine, although I'm not so sure so much that this is in the First Amendment, that this limitation inheres, but you can posit really absurd hypotheticals about very, very draconian penalties for soliciting things that aren't criminal or perfectly lawful. I think if that happened, you'd have some sort of rationality limit. But I just want to underscore, I don't think that's what's going on here, because this is, as you said, a circumstance where legislatures might decide that the people being solicited to do the underlying conduct are less blameworthy and more vulnerable, as I think this case well illustrates. And also, this is a very special circumstance. It's true that remaining in the country unlawfully is only a civil violation, absence of special circumstances. But it's a civil violation that's subject to a very, very serious civil penalty, deportation and removal. And I think that indicates that this really is conduct that Congress has taken seriously and has made an appropriate determination soliciting or facilitating and is deserving of punishment. What do you say to the charitable organizations that say, even under your narrowing construction, there's still going to be a chill or a threat of prosecution for them for providing food and shelter and aid and recommending people for scholarships and all the rest? You're familiar with all the hypotheticals, but they seem to have a sincere concern about that and that it will deter their everyday activities. That's what a lot of charities do as part of their day-to-day activities with non-citizens who are not in the country lawfully. I think a couple of observations. One is a lot of what they talk about and you just recited isn't speech at all. It's definitely conduct. So it doesn't raise First Amendment questions at all. I understand the concern, though, that goes to both about are these activities being chilled? And I'd say that on our view of the statute, that activity is not going to be covered because we think it has to meet a very high bar of aiding and abetting liability as traditionally understood with all of the old soil. And explain that. Why wouldn't it be covered? Yeah, because I think there are a bunch of different examples and I think there are sort of different requirements that would weed out different versions of them. I think the one that's most relevant to the food and shelter one, you know, I want to I want you to stay here and I'm going to help you. And here's which I think is a pretty common part of the conversations and and happens all the time. So is that enough? I don't think so. I think there's a difference between assuming, taking for granted that people are going to be in the country unlawfully and providing some assistance to them while they are here and taking steps that where you associate yourself with the venture and seek by your action to make it succeed. That's the canonical formulation of aiding and abetting liability. And I just think it's hard to say that a charity that provides assistance to people, including people who are in the country unlawfully, is meeting the requisites of a veteran. I don't know why you say that. I mean, if the venture is if the civil violation or the criminal violation is to have the person stay here and remaining here is unlawful, why wouldn't giving them food and shelter be a statute? Because, Justice Jackson, I don't think a couple of different reasons. You know, one is I don't think it's going to have the requisite intent, at least in the vast majority of the cases. I think all of these organizations are describing themselves as wanting to provide food and shelter for people who need who are in need, who need food. And what if they what if they limited their mission to people who are here unlawfully? Yes, we're limiting our mission. We see a bunch of people in our community who are here. We know they're here unlawfully, but they're also starving. And what we've decided to do is make sure that they're not on the streets. They're not exposed to the elements. We're giving them food and shelter. Yeah, I think I give the same a version of the same answer, but just to say that even then, I don't think that's acting with the purpose of keeping those people in the country when they would otherwise leave. I think it is any examples of prosecutions in those cases? No, absolutely not, Mr. Chief Justice. And, you know, likewise, you could imagine, I think, as one of the things I said earlier, is that we would take cases under this statute the same way you take cases under other aiding and abetting statutes. You could imagine there are a lot of social services organizations that provide services and counseling to people who are engaged in unlawful activity. And I'm not aware of cases that suggest that the provision of those services to someone who happens to be engaged in unlawful activity, aids and abets. Well, we do know that Customs Department made a list of all of the people, religious entities, the lawyers, and others who were providing services to immigrants at the border and was saying that they intended to rely on this statute to prosecute them. You're saying to me it didn't happen. Congress issued a subpoena to many of these organizations, did a lot of investigation as to what was said. So how do we tell all those people not to chill speech because the only thing being punished under this statute, unless you want me to add that it has to say that the statute requires something more than just words, we're criminalizing words related to immigration. And I thought there were only certain statutes that were immune to First Amendment challenges, obscenity, fighting words. Otherwise, everything else is subject to the First Amendment and strict scrutiny. So why should we uphold the statute that criminalizes words, makes the punishment five years, which is rather significant. I know of no other statute where aiding and abetting punishment or solicitation punishment is greater than the punishment we're giving the person who's going to commit the crime. But that's what we're doing with this statute. It's a first of a kind. A couple of thoughts, Justice Sotomayor, I think one of the traditional categories of speech that is outside the First Amendment is speech that is straight from Williams, is speech that seeks to induce or commence illegal activities. If something is going to be illegal, but people into the United States illegally all of the time and they're here, they're remaining. But you would have to prove that they're remaining because of those words. Are you are you willing to take that part of the element? Because that would make sense to me. We're willing to take all of the soil that comes with the idea. So do you believe that the soil includes that the government has to prove that the words actually is what caused that person to remain? No, I don't think that's a requirement of traditional. So why not? Because that's what I think words that have to do with inducing a crime is that you want the crime to succeed and that you have to make yourself a part of the principle of succeeding in that crime. So if that's what you think aiding and abetting connotes, then we're that's actually a further reason not to hold the statute invalid is overbought. It means the statute hasn't even narrowed. Well, no, you tell me, because I think we're going to talk to the grandmother who lives with her family, who's illegal or who are noncitizens. The grandmother tells her son she's worried about the burden she's putting on the family and the son says, Abuelita, you are never a burden to us. If you want to live here and continue living here with us, your grandchildren would love having you. Are you can you prosecute this? And if not, why not? So what do you tell the grandmother? I think not, Justice Sotomayor. I think it's very hard. Don't stop qualifying with think. Just the minute you start qualifying with think, then you're rendering asunder the First Amendment. People have to know what they can talk about. Once you create a lack of clarity in the law, then we're not writing to clarify. Justice Sotomayor, I don't think it's possible for me or for this court to define how these principles will apply in all of the different factual circumstances that we can imagine. And I think the fact that we're trying to engage in that exercise is one of the problems with overbreadth analysis. What we would do is have this court say, not the government say, but this court say and write into law the idea that you could ask to criminalize actions, not words. You've chosen to read a statute that criminalizes words. Shouldn't we be careful before we uphold that kind of statute? We're asking you to go only so far as every aiding and abetting and solicitation statute goes and to criminalize words. Generally, with aiding and abetting, the person has to do something to make that act come about. I think generally, yes. I think there are some circumstances where soliciting someone to commit a crime with words would count. I'm not willing to give that up here because our position is the same aiding and abetting principles ought to apply in both contexts. But if you have a narrower conception of aiding and abetting, that is only all the more reason to conclude that this is a narrow statute that doesn't trench on the First Amendment. Can I ask? I'm sorry. Go ahead. There was an intent requirement asked for here. You say it was broader than you think it should have been given. But we've had a number of cases this term. Criminality, Percoco, Dubin, now this case where the government is exceed conceding that the statute read by its plain terms is too broad. And you come back to us and say, read it more narrowly, but you won at a jury trial on a broader charge. If we keep doing as you ask us to, which is to rewriting statutes, are we encouraging the government to continue this practice? I don't think so, Justice Sotomayor. And again, we're not asking you to rewrite the statute. We're asking you to give these words the same meaning. But you said the jury instruction wasn't consistent with this. So that's right, Justice Sotomayor. And in those other four cases, it wasn't consistent with this. We keep you keep coming here and admitting that statutes have to be read in a different way when you argued the opposite below. So let me put this case in context, Justice Sotomayor. This case was tried before Sen. Smith came up, before the Ninth Circuit called for supplemental briefing on overbreadth. And it really injected this whole constellation of issues and concerns about a broad reading of the statute that didn't really exist before. And at the time, I think it was reasonable for the government to support the model jury instruction, especially because no one seriously argues that the speech at issue, the conduct really at issue here was protected by the First Amendment. So I acknowledge we didn't write the instructions at the time of the trial the way that we would write them now with the benefit of five or six years of experience and a lot more airing out of the arguments. And I acknowledge you should send the case back to the Ninth Circuit and let the Ninth Circuit decide what's appropriate in light of that. Justice Thomas, anything further? Justice Alito? Anything further? Justice Sagan? Mr. Fletcher, so again, I want to assume your version of the statute as to encourage and as to the mens rea. Now, I want to make two further assumptions, OK? One, we can come back to those assumptions, but I just want you to assume them. The first is that the statute, even as interpreted by you, would in fact encompass the wealth of examples of people of various kinds, friends, neighbors, doctors, whatever, saying to people, I really think you should stay and saying that knowing that they're in the country unlawfully, having all the intent that. And so my first assumption is that all of those communications are within the statute. My second assumption is that for one or another reason, maybe it's what Justice Alito said about the fact that this is civil conduct. Maybe it's for another reason. My second assumption is that this statute is applied to those people would be unconstitutional. And now I want you to tell me how to do the overbreadth analysis on this. Because I think I might say to you, I can imagine that there's like a huge number of such communications taking place every day, because for every person who's in this country unlawfully, there are probably some number of people who want that person to stay, family members, you know, whatever. So how do we think about the overbreadth on those two assumptions? Taking those assumptions, the court has never said explicitly you can't reduce overbreadth to math. You know, it has to be substantial and it has to be substantial, both absolutely and in relation to the statute's plainly legitimate sweep. I take it based on those assumptions that you would say that's substantial. That's a substantial number. I'm asking, how do you even go about thinking about that question? So I guess I'd say maybe that's substantial in the absolute sense. I guess I would say, though, that the court has also emphasized the real costs of overbreadth in terms of invalidating permissible applications of the statute and that that's something that has to be borne in mind in the relative analysis. And at least I can't afford to have read every one of the court's overbreadth cases, but in the vast majority of them, the court says either the vast majority of the applications of the statute are unconstitutional or there's just no core of constitutional applications. I don't think either of those things, even granting your assumptions, I don't think either of those things would be true here. And the other thing that the court has said is it can't just be theoretical. We want some realistic demonstration of chill because this is ultimately overbreadth is sort of a provincial judicial decision that we're concerned about chilling in the real world, understandably. And so we're going to depart from traditional principles by letting people whose conduct isn't protected assert the rights of others in essence. And there may be reason to do that, but we should do it very carefully. And I guess I think you have almost a textbook case here for whether we know there is not a chill because the statute is on the books in basically the same form for 70 years and no, it was only used. And how was that argument? Because it's a strong argument. How is it different? Sometimes the government comes in and says, says essentially, don't worry, we're never going to apply the statute in these circumstances. And we always say back, it's like, well, that's very nice. You can stand up there and say, but we're not taking your word from it. How is this different from that? So in a couple of ways, I mean, one is that to the extent that we're saying that here, mostly what we're saying, and I guess maybe this is fighting your, your premises a little bit, but we're not just saying, take our word for it. We're asking you to write into the stash, into your decision that the statute has the ways that we won't be able to get around in the future. I understand. You might think we're assuming here that that doesn't fully solve the problem and what to do about it then. And then I guess I'd say, then we're in this special world of, of over breadth, right? Which is a departure from usual standards. You're not interpreting the statute. You're not just asking, is it constitutional as applied in a particular case where you sometimes say, we're not willing to take the government's word for it. You're saying, are we going to do this extraordinary thing and depart from ordinary principles of adjudication? And there, I actually do think it's fair to say, yeah, we're going to demand a real showing of chill. And I think here, this is not some newly passed statute where we're all just sort of guessing about what might happen. We have a lot of history and the thing that raised concerns, the thing that got the amici to write the briefs and to raise all the hypotheticals that we've now spent all this time debating was the ninth circuit's invitation to imagine broad interpretations of the statute in order to strike it down. There really wasn't a concern about it during all of the many decades it was on the books before that. Thank you. Justice Gorsuch, Justice Campbell. You've reassured us with your narrowing construction, just take aiding and abetting law, solicitation law, and bring that old soil here. And that is a good answer, but I think it still raises questions because the underlying offense is so different from bank robbery or carjacking or securities fraud. It's just existing here is the underlying offense. And I don't know if that should affect how we think about it. And just wanted to get your response to that, because that makes it seem a lot broader. You wouldn't say providing food to the bank robber necessarily is, you know, a meal is aiding and assisting the aiding and abetting the bank robbery. But if the underlying offense is just being here, that seems a little different. Should that affect how we think about it or how do you just answer that concern? Yeah, so it's a fair concern. I'd say a couple of things. You know, one is there are other offenses that may not get that just being here concept, but there are aiding and abetting concerns about other relatively minor offenses, you know, the tax things, the sort of graft evasion, drug use, things like that. But law is capable of dealing with this, you know, aiding and abetting minor offenses that happen a fair amount. So I think that helps with one set of concerns. The being here concern, I guess I do think you could take into account the nature of the offense and deciding sort of are the requisites of aiding and abetting liability met. One part of that answer might be what I said to Justice Jackson, that having the intent to help someone assuming they are going to be here isn't necessarily the intent that they remain here. Another thing might be, you know, the aiding and abetting doctrine demands that you associate yourself with the venture and seek by your action to make it succeed. And I suppose you could take account of what the venture here is in deciding sort of what level of words or action are necessary to constitute facilitation in that context. So I guess I do think that traditional aiding and abetting principles would allow those sorts of things to be taken into account. Thank you. Justice Barrett? Mr. Fletcher, so you've pointed out and I agree with you that it's interesting, kind of odd. It strikes me as unusual, but I haven't done a study to see, to have an overbreath challenge to a statute that's older because all of these overbreath challenges invite a string of hypotheticals. But as you say, we have a track record. Can you think, have you looked at it? Are there overbreath challenges that have succeeded in the past where we have this much data? So I don't know, candidly, I can't, I'm not aware of one of the court's recent cases where this has come up, you know, Stevens Alvarez, those sorts of cases are relatively newer laws. The reason I don't want to say definitively that there isn't one is that I think some of the earlier laws involved state statutes and I just haven't traced back exactly how old they are. But I'm certainly not aware of anything where you have sort of the track record going the other way. Not only is it old, but also we have such a strong empirical track record against the very broad interpretation. And, you know, I think that's relevant not just to overbreath, but also to what the statute means, because Congress has been coming back and amending the statute and revisiting it against the backdrop of that narrow application of the statute. When speaking of state statutes, so we have some amicus briefs saying that lots of states have language like this. It's possible that lots of statutes would then succumb to First Amendment challenges of this sort. Have there been similar overbreath type concerns litigated, especially Simpson and Angsmith, about other solicitation statutes or other induce and encourage statutes? It comes up occasionally. They don't get a lot of traction. One example that we cite in our brief is the Ford v. State case out of Nevada, which is about solicitation of prostitution. Very similar statute, you know, is induce, encourage or persuade, coerce to enter into prostitution. And the defendant tried an overbreath challenge there. I think we also cite a Minnesota case. So there are examples out there. But frankly, courts have not had much difficulty dismissing them, either because you can't imagine circumstances where the aiding and abetting or solicitation would actually be protected or because even if you could, that's such a sort of edge case that it doesn't call for the application of overbreath. Thank you. Justice Jackson? So I guess I'm trying to figure out, looking at all the other provisions in this statute, what what is the core constitutional application of this? I mean, you sort of responded to Justice Kagan's question in saying that if we can identify that and we understand that it's there, that would be a reason not to strike it down. But I'm struggling, especially, for example, with the part of 1324 here that is small Division 5-2 that itself has an aiding or abetting piece to it. So it sounds like Congress was covering aiding and abetting to some extent in another part of this same statute. So if we read this one to be aiding and abetting, too, what are we what is it really covering? It's a different kind of aiding and abetting. So the Romanet 5 aiding and abetting is aiding and abetting violations of the preceding clauses of 1324A1A. So aiding and abetting, bringing someone to the border in violation of Clause 1 or harboring or transporting someone within the country in violation of Clauses 2 or 3. That sort of aiding and abetting is covered by 5. All right. And what is the aiding and abetting in 4 that could be aided and abetted per 5? So the aiding and abetting that is covered in 4 is assisting someone to enter or remain in the country unlawfully. That's the core constitutional application of 4. That's what it does. And if you the way you would violate 5 is if you aided and abetted someone who was soliciting or facilitating people to enter into the country unlawfully. I see. You're helping the person who's doing it. Mr. Hansen's helpers. All right. So in the 4, you say it's aiding and abetting or soliciting is the constitutional application of 4. And we were to look at aiding and abetting in the old soil that comes with it. And Justice Kavanaugh raises an interesting point, which is wouldn't providing provisions to a bank robber who you knew to have committed this crime and is here, wouldn't that be considered aiding and abetting? And if so, why isn't the nonprofits who are providing these kinds of provisions to people who are remaining in the United States in violation of the law also a violation of this? So, yes, providing tools, a gun, a mask to a bank robber, knowing that he's going to use them to rob the bank and intending that he used them to rob the bank, that's aiding and abetting the bank robbery. I think the reason why I don't think the provision of food or something like that to a non-citizen who happens to be here unlawfully qualifies as aiding and abetting after the fact. He's robbed the bank already and he comes and he knocks on the door and you know he's a bank robber and you let him in, you let him stay. And maybe that's harboring, I don't know. That's not aiding and abetting at all, that's accessory after the fact at best. 18 U.S.C. 2 covers only accessory before the fact and aid during the crime, but not aid after. Not aid after. All right. One more. The point that Justice Alito brought up with the civil violation. Are you asking us to decide that here or could the Ninth Circuit be tasked with looking into that when we return the case? If we return the case? I guess I have understood Respondent, Mr. Hanson, to be making, relying on the civil criminal distinction in service of his overbred argument and to suggest that to the extent that Section Clause 4 would reach aiding and abetting or soliciting conduct that is only a civil violation, that's a First Amendment problem and that that is part of his overbred argument. But the Ninth Circuit didn't rule on that, right? The Ninth Circuit didn't reach the question of how civil liability interacts with any of this. That's correct, because the Ninth Circuit held it overbroad, you know, on a much broader theory. So I suppose you could, if you didn't want to reach that question, you know, you could decline to do it, say that the Ninth Circuit's reasoning was wrong, that there may be alternative arguments for overbred and send it back for that purpose. I guess I view this more as a sub-issue of the overbred argument on which the court granted cert and not as the sort of really distinct issue that the court usually remands for consideration of. But we would have to sort of sort it out. Isn't it complicated to sort of determine the extent to which the speech incident to criminal conduct scenario, which is what I understand you to be relying on, reaches civil conduct as well? I don't think so. I think the court crossed that bridge in Gazam the year after Givoni, which we cite in our reply brief. It did it again in Pittsburgh Paper. And then in Williams, it described relying on Pittsburgh Paper, a civil case, the or commence illegal transactions. So we think you've crossed that bridge already. Now, I'm sensitive to the idea that these are hard questions of aiding and abetting law and First Amendment law. And this is an awkward posture to try to nail all of them down. And so I do want to emphasize that all we think you have to decide today is that the statute is not overbroad. And if you want to reserve questions that might arise in an as-applied posture, I think it's perfectly fine to do that. Thank you, counsel. Ms. Bundari. Thank you, Mr. Chief Justice, and may it please the court, Mr. Hansen should prevail here for three reasons. The government concedes that the statute is unconstitutional under its plain meaning. Instead, it asks this court to rewrite the statute to prohibit only solicitation and aiding and abetting. But that is Congress's job. And Congress in 1952 took out the very words the government now asks this court to write in, solicit and assist. And in 1986, Congress took out the required intent. The government has cited no case in which Congress has used the terms encourage and induce alone to stand for solicitation or aiding and abetting. Second, even if you construe the statute as limited to solicitation or aiding and abetting, this court should not create a new category of unprotected speech, namely criminal solicitation of civil law violations. The historical roots of that exception are limited to solicitation of crimes and for good reason. If the justification for treating speech as categorically unprotected is that it is integral to conduct that the government can punish, then the speech cannot be punished more harshly than that conduct. This court has consistently resisted prior invitations to expand categories of unprotected speech and should do the same here. Otherwise, Congress and the states will be free without any First Amendment scrutiny to criminalize speech soliciting violations of the vast range of administrative and regulatory laws that govern us today, from mask and vaccine mandates to parking ordinances. To deny the government's requested expansion would only mean that it would have to satisfy ordinary First Amendment scrutiny when it regulates such speech. And finally, even if the court were to adopt the government's narrowing construction, Mr. Jury was not instructed to apply the government's narrowing construction, and the government argued that the plain meaning of the statute should control. I welcome the court's questions. Is speech the only component of the First Amendment subject to overbreadth? Justice Thomas, I think that speech is the realm in which this court has applied overbreadth analysis. Has it ever applied in any other aspect of the First Amendment? I'm not aware of any context in which it has applied overbreadth to other aspects of the First Amendment. No, Justice Thomas. Counsel, you focused on the amendment, was it 52 or 56? 1952. 1952, suggesting there was a purpose to take out the two provisions that were, the two words that were taken out and the two left in. What was that purpose? In other words, what is the distinction you see between the words that were left in and the words that were taken out? I think we can go by what Congress actually did. Congress removed the narrower verbs, solicit and assist, and left in the broader verbs, encourage and induce. That was a deliberate choice. If Congress wanted to write a solicitation law, it could have left in the verb solicit. And I note that in 1984, which was two years prior to the 1986 amendment to the statute, Congress drafted 18 USC 373, which is the general prohibition on soliciting a crime of violence. And Congress took a very different approach in writing that solicitation statute. It required specific intent to solicit a particular felony, and it required circumstances strongly corroborative of that intent. And the Senate committee report noted that mere encouragement is not enough and that the So we would have to see a distinction along the lines you suggest between solicit and assist and encourage and induce to the extent that the former are broader or narrower? Encourage and induce are broader terms. Solicit and assist are the narrower terms. And I also think that you can look at the pattern of amendment to see that Congress over time has broadened the statute from its initial roots. Initially, it was tied to prohibiting the entry of assisting the entry of contract laborers. Then Congress took away the limitation on contract labor. It was assisting anyone's entry. But still, in 1952, it used the verb solicit and assist and it required the willfully or knowingly standard. Then Congress removed the mens rea requirement and required only knowledge or reckless disregard. Again, an expansion. And Congress removed the verb solicit and assist to leave only the broader terms encourage and induce and expanded to remaining in the country unlawfully in 1986. That was its final expansion. So over time, Congress has consistently shown its intent as evidenced by the plain text to cover much more than solicitation or aiding and abetting. I just wanted to follow up on that quickly. And let's just assume that you're wrong about Congress's intent. Would you concede that if we accept the government's narrowing construction, let's assume the underlying offense is criminal, not civil. Would you concede that you would lose your overbreath challenge if the government is right about the narrower solicitation? If you were limiting it just to crimes and only to solicitation and aiding and abetting with the requisite intent, then yes. But I don't understand the government to be limiting its argument only to crime. Oh, go ahead. Yeah. No, my hypothetical. Yes. Change that. Yes. Thank you. Well, that's what I wanted to ask you about. I understood your second point to be that the First Amendment prohibits the criminalization of the solicitation of conduct that is unlawful but not criminal. Is that your second point? That is correct. And you think that's true across the board in all circumstances? Yes, Justice Alito, because we're talking about whether speech is categorically beyond the protection of the First Amendment. So anytime you have a law targeting speech, which would cover a solicitation law, the first step is, of course, it's a law targeting speech. You know, trigger First Amendment scrutiny. Now, if the law fits within a narrow category of historical exception, like obscenity and so forth, then it doesn't have to satisfy. So solicitation, soliciting someone to engage in prostitution, that's unconstitutional. Criminalizing the solicitation of someone to engage in prostitution, that's unconstitutional. No, Justice Alito, that can be regulated as a transaction. And this court in Williams made clear that you can you can render certain transactions illegal. So speech that effectuates those transactions, for example, if I say to you, I want to buy drugs that is proposing an illegal transaction, that speech can be regulated. And that was the case with Williams, where it was a speech about a transaction involving child. All right. Not soliciting a prostitute, but encouraging someone to engage in prostitution. That cannot be criminalized. If prostitution is not a crime, then such speech is not categorically unprotected. It would just be subject to First Amendment scrutiny, which means that if the government had a compelling interest and narrowly tailored that law, they could do so. But but that is the key difference, Justice Alito, between solicitation as used in the sense of transactions versus solicitation of a third person to do something. So encouraging someone to engage in prostitution is not necessarily criminalizing. That is not necessarily unconstitutional. It just has to satisfy strict scrutiny. And you would apply the same thing here. That is correct, Justice Alito. Any law burdening speech where it makes the speech a crime and it's soliciting underlying civil violations would be subject to, if it's content based, it would be subject to encouraging someone to commit suicide. I think the same thing. If it's not a crime, you just subject it to ordinary First Amendment scrutiny, which the Minnesota Supreme Court did in Melker Dinkle. It applied strict scrutiny to a law encouraging suicide. In that case, the law did not satisfy strict scrutiny, but a narrowly tailored law very well might. What if the person who is encouraged to commit suicide is intellectually disabled, particularly vulnerable to that encouragement? Again, I think if a state or Congress passed a law that was directed specifically at encouraging someone in that vulnerable state and narrowly tailored it, it very well might pass strict scrutiny. But why would that be? Because that's an important interest. Protecting those people is an important interest. That's correct. I think the strict scrutiny analysis builds into it the interest that the government has in criminalizing speech. Why wouldn't that be satisfied here? In this case, the government has now people disagree about this, but the law expresses a strong interest in regulating who is allowed to remain in the United States. I think that that standard would not be satisfied here, even if you read this as a narrow solicitation law, because it would reach solicitation of civil law violations that Congress itself has incentivized people to engage in. So, for example, when Congress has provided under the Violence Against Women Act, a pathway to lawful status for women who have been battered or a pathway to lawful status for victims of trafficking or a pathway to lawful status to people who overstayed their visas but married a U.S. citizen. In all of those cases, lawyers, community members who provide Know Your Rights training and materials are entitled to tell people about those paths to lawful status if they remain even unlawfully. And I don't think the government could claim a compelling interest. I'm sorry to interrupt. Are you finished? So I just want to follow up on Justice Alito's line of questioning with you, because I think I heard you say there could be some examples where you could criminalize the act of soliciting, raiding and abetting an underlying civil offense, whether it's prostitution or assisting the suicide of a vulnerable person. And once you said there could be circumstances, at least possibly, where such a law would be narrowly tailored and would survive. How does that affect our overbreadth analysis? Because now we're saying that civil criminal distinction isn't what matters. There are some categories of cases, even with respect to underlying civil offenses, where the government can regulate aiding and abetting or soliciting more specifically and dramatically than the underlying offense. So now we've narrowed the category of dispute. How does that affect the overbreadth analysis? I think if you are talking about a world in which you've narrowed the statute to solicitation only, so leaving aside the just pure encouragement and inducement, and you've narrowed it in that way, I think the statute would still be substantially overbroad because it reaches solicitation of civil violations that I don't think even the government would claim an interest in criminalizing. And again, I point to the example of lawyers advising people about a pathway to lawful status that Congress itself has incentivized. And I think it would raise major First Amendment concerns for the government to be able to criminalize lawyers and others providing truthful information about legal options. I would certainly imagine that there would be a very strong as applied challenge in those kinds of cases. But in overbreadth analysis, we're supposed to ask, I don't know what we're supposed to ask, but something like, is it impossible to apply the statute constitutionally or is it really, really almost unlikely that it'll ever be applied constitutionally? And you're positing a narrow set of cases in which it would be a good First Amendment challenge might exist. But again, how does how do we how do we struggle with this overbreadth? When's enough enough? I would point you to the the approach the court took in Free Speech Coalition and in Stevens, where the inquiry is simply does the statute, even if you narrowly construe it, does the statute reach protected speech that people engage in? Is it realistic speech that they engage in every day, frequently? In Stevens, the court didn't do an empirical analysis. It looked at the fact that many people engaged in hunting videos actually as a strength of the overbreadth challenge because it said you don't need to look at who's not speaking. The fact that people do violate the statute as the government construes it is a reason for us to apply the overbreadth remedy. Similarly, in Free Speech Coalition, this court looked at the fact that mainstream movies such as Romeo and Juliet or American Beauty might fall within the terms of the statute. And it didn't attempt to quantify examples of mainstream movies vis-a-vis actual child pornography. Mr. Fletcher points out that the statute has been with us a long time and we've just never seen such prosecutions or at most just a handful of cases. So in that circumstance, isn't our task made easier with respect to overbreadth? And you can just say, look at the history. Two responses, Justice Kagan. First, prosecutions are not necessary. In Stevens and in Free Speech Coalition, this court didn't require actual prosecutions of protected speech. And in Stevens, this court invalidated that law 11 years after it had been passed. So that law had been on the books for a while. In Free Speech Coalition, it had been at least five years. In Virginia v. Black, the plurality opinion holding that statute overbroad, that law had been on the books for 35 years. So the length of time and the lack of prosecutions isn't the inquiry because on a facial challenge, the facial validity of the law does not depend on the government's prosecutorial choices. But doesn't the prosecutorial choice have something to do with what kinds of activity the government is involved in? Even if you look at the prosecutorial activity as relevant to that, I think there's realistic danger of chill here just from the fact that the government in recent years has invoked Section 1324 in investigative activities. As the amicus brief from the Reporters Committee for Freedom of the Press noted, the government doesn't treat Section 1324 as a dead letter. It's still available to open investigations, even if they never charge someone. The city and state's amicus brief notes that they have to certify compliance with 1324 to receive funding in certain instances. But finally, I would just point to the government's ever-changing positions on what the statute means as presenting a chilling effect to the public. But in addition, just to follow up on Justice Kagan's point, in addition to prosecutions, we also have a record of activity not being chilled. I mean, no one's pointed out there are charitable organizations, to use Justice Kavanaugh's hypothetical, that are not giving food and shelter and resources or that lawyers are afraid to give advice. I mean, the statute's been on the books for a long time, and there's an absence of prosecutions. There's also an absence of demonstrated chilling effect. This court has never required a demonstrated chilling effect. Again, in Stevens and Free Speech Coalition, this court didn't say the fact that mainstream movies were out there, the fact that hunting videos were out there, was proof that nobody was chilled. Because the overpress doctrine is concerned with two main things. One, the chill on people who would conform their behavior to the letter of the law. And that behavior isn't visible to this court, the people who are not speaking. And second, it gives an incentive to Congress to craft narrow laws. So, for example, if Congress made it a felony to criticize the president and only ever prosecuted people who engaged in constitutionally unprotected true threats, that law could then be immunized from challenge if the government could come in and say, no, no, no, this person engaged in true threats, even though all the jury had to find was, did you criticize the president? Yes or no? It is a little awkward, though, that this case comes up in a posture with Mr. Hansen, who I don't think anybody could say he's been chilled from speaking. And I mean, he's had no problem soliciting people here in this country and defrauding them to the tune of lots and lots of money. I mean, I mean, he is he's victimized these people. And it may be a poster child for a situation in which the underlying offense might be criminalized because he's taking advantage of very vulnerable people. And it just seems awkward that we're in a posture where we're asserting third party rights of really hypothetical situations without an example. In this case, Mr. Hansen is asserting his own legal rights. I want to be very clear, how is he being affected? How are his speech rights being affected? Mr. Hansen, as a defendant, he is entitled to have the government prove facts or elements that would make out speech that is constitutionally unprotected. And that did not happen here. So we don't disagree that he victimized many people and for that he was convicted under fraud counts and received 20 years. And none of those will be disturbed here. But under the encouragement provision, the government did not have to prove that he lied to anyone, that he deceived anyone, that he engaged in any false speech. All they had to show was that he encouraged or induced people. No mens rea requirement, no intent. Well, that's going to be the government concedes that has to be resolved on remand. And it seems highly unlikely that he's going to prevail under that standard on remand. I think we'd agree on that. I mean, he and he had every intent in the world to keep these people here to to to take their money with no prospect they'd ever actually seek to obtain any kind of relief. And that's what those are the facts. And I guess, again, it's just a little awkward that we're worried about chilling other people's speech and it has nothing to do with the case before us. I would argue that if you were reconsidering overpriced doctrine, this wouldn't be the case in which to do this because the government secures convictions under the broad terms of the statute that goes to the chilling effect. The broad terms of the statutes that are on the books, which the government uses to secure convictions, that in and of itself is enough to tell the public that if I engage in any conduct that the government doesn't like, even if it doesn't amount to solicitation or aiding and abetting with all of the many requirements that the government says should be read in, it won't matter because I could be convicted by this jury. And in fact, that happened in this very case. Right. I mean, didn't the government object to narrow instructions that would have tailored this to the kinds of things the government is saying right now? That is correct. The government opened court with respect to this particular defendant. The government said, no, no, the statute is really broad and it covers all this kind of conduct. That is correct. The government objected to those very elements in this case, in Sinanang Smith, in the district court and in the 10th Circuit case. Do you disagree with Mr. Fletcher that they've never brought such a prosecution? I don't disagree that they haven't brought such a prosecution. What I submit is that that's not relevant to the overbreadth analysis because the government is not going to threaten invocation of Section 1324 as it has done, as the amici have pointed out, and mainly because in a facial challenge, the government's choice not to prosecute to the full extent is not relevant. Just as in Stevens, it was not relevant that the government essentially had promised never to use the statute that way. I do want to go back to Justice Gorsuch, your question about this particular defendant and his conduct. In R.A.V., the St. Paul, the opinion for the court noted that just because someone engages in conduct that could be regulated in one way, doesn't mean that the government can regulate it in another way that violates the First Amendment. So there you had a defendant who burned a cross in a family's yard. And Justice Scalia's opinion for the court noted that arson laws, property damage laws could have gotten that defendant's behavior. But that didn't mean the application of a viewpoint discriminatory law was permissible with respect to him. I totally accept that. And I totally accept as well your point. Your good point that if even under the government's view, remand is going to be required and you'll have an opportunity to make arguments how successful they will be is an interesting question. But in an overbreadth challenge, isn't it surely relevant that your client's not likely to get benefit from whatever we do? And as the Chief Justice just pointed out, there's never been a prosecution of some of these hypotheticals we've been discussing. And the book, the law has been on the books for 70 years. I mean, it is an extraordinary thing for this court to grant third party standing, which is effectively what we're being asked to do here. Why would we do it in this under the under those circumstances when an as applied challenge would always be available? Should the government, because I don't take them at their word either, OK, but should they ever go after somebody who actually meets one of these hypotheticals that have been very interesting this morning, they would have a good First Amendment defense. Justice Gorsuch, I would note the law in its current form has only been on the books since 1986, absent the mens rea requirement, and the government secures convictions as it did in this case without showing any of the elements that would make someone's speech unprotected. So I understand that Mr. Hansen's behavior was not commendable here, but the government didn't have to prove any of the narrowing elements that would make the statute permissible. And so I think that is one reason that this court should make sure that this law doesn't in the future chill those who have engaged in the type of speech that Justice And is it possible to really figure out how many people have been chilled? I mean, I guess I'm trying to understand how it would work if we didn't have some sort of an over breadth argument, because on the one hand, you can look at the situation and you can say the government has never charged any of these people who are actually doing this. But we don't know by this. I mean, for example, Justice Kavanaugh's example of, you know, helping helping noncitizens by giving them food and water. Fine. The government has never charged any, but we don't know how many other people would have engaged in that kind of speech and action if it weren't for this law. So it's really hard to know, I think, by looking only at what the government has done, who is being prevented from engaging in First Amendment activity. That is correct. And that is one of the overriding concerns of over breadth doctrine, again, is the concern with people who are silent and whose silence is not visible to the court. But we have no record of that here either. We're just we're just coming up with hypotheticals. Right. Well, what we have is a record of of people coming into court and a factual finding of district court on who's been chilled and how. I mean, that could have happened. We don't have that here. Justice Gorsuch, I don't think that would be likely to happen in a criminal case like this, perhaps in a pre enforcement challenge. But I also note that the amici, the amicus brief, noting lawyers have said that lawyers, immigration lawyers are watching this case very closely and already starting to advise each other on how they may have to curtail the advice that they give to their clients. I also want to emphasize that the government hasn't made very clear the distinction between solicitation and aiding and abetting. It seemed to conflate those points. Aiding and abetting requires that the principal complete the underlying act. I'm not sure if the government is saying that that is required here because solicitation does not require that. The government's also not explained whether encourage means solicitation and induce means aiding and abetting or vice versa, which of these words apply to which concept. Solicitation and aiding and abetting aren't the same. They have different elements and the government hasn't explained how this court could clearly write in those elements in a way that would tell the lawyer or the community activist advising people what their rights are under the law, whether they can remain in the country. And when the stakes of getting it wrong are felony prosecution and five years imprisonment, people are not going to go anywhere close to the line. I thought the government was saying that both solicitation and aiding and abetting were coming in and that the elements of the two offenses would be the traditional elements, both of which require intent. I agree that both of them require intent, but the government has at various times suggested that you need an act, which I agree is true for aiding and abetting, but for solicitation isn't necessarily true. So you're reaching pure speech and the hypothetical of someone simply saying, come to my food pantry, not engaging in the conduct of actually giving food, just saying, come to my food pantry. It's open to anyone who's undocumented. Would that constitute a solicitation to remain in the country or someone who runs a domestic violence shelter, for example, telling people who come knowing that they're undocumented, stay here, it's a safe place, you're welcome here and we don't want you to leave here where you're safe. It's critical that a statute that hits on speech draw clear lines when felony prosecution is at stake. Congress did not do that here. And Congress could do so if this court were to hold that this law simply doesn't say what the government says. And Congress then remains free to draft the narrow aiding and abetting or solicitation law if it wishes to. Thank you, counsel. Justice Thomas, Justice Alito, anything further? Justice Sotomayor? Yes, I think you maybe gave up a little bit too much when you were talking about answering Justice Alito's questions and Justice Gorsuch, that there might be cases where Congress could criminalize a civil violation. Did I understand you to say once you give that up, then this is OK because they can criminalize all civil violations? Not at all. In the circumstances in which they are. I would like to know where to draw that line. I find it hard to borrow concepts of aiding and abetting or solicitation because by definition, both of those concepts, as we have traditionally had them in the criminal law, require a criminal act by the perpetrator. There has to be an act done by the perpetrator. You have to solicit a crime. We've never had a crime defining solicitation of a civil violation, correct? That's correct. This court has never upheld a criminal solicitation law directive. Now, too much. Never done it. And in fact, all of the solicitation and aiding and abetting crimes, generally the punishment is less than the completed act, correct? That's correct. Perpetrators are treated more. The perpetrators of the crime are treated more harshly in solicitation. It's still not. The punishment has never been as great as the completed crime. You don't get punished for solicitation, soliciting arson and get treated as harshly as the arsonist. I think, yes, I want to be very clear about our position, which is that solicitation, criminal solicitation laws, when they're directed at civil conduct, are not categorically unprotected. So let's go because let's go there, because when are they not categorically protected? When are they protected? I want to know what the difference is, why this one is not protected and others might be. I think that if you had a law criminalizing solicitation of certain civil violations, you would subject it to strict scrutiny and it would then be a case by case analysis. I don't think the government has even attempted to argue in this case that this law would satisfy strict scrutiny with respect to civil violations. That argument has not been on the table. But I say that only to show that when it would qualify, what you admitted that inducing a person of lesser mental ability to prostitution would probably fall into it. Yes, I think you could see a spectrum of laws. Again, it's the normal First Amendment scrutiny. So where the government has a compelling interest and, of course, narrowly tailors its law and has no alternative to get at that conduct other than criminalizing speech, it might satisfy it. But on the other end of the spectrum, if a municipality decided to make it a crime to solicit parking violations because everyone in town is just violating the parking violations and paying the fee, and so it's decided to make it a crime to solicit that, I don't think that that speech is categorically unprotected under the First Amendment and probably wouldn't satisfy heightened First Amendment scrutiny. So now let's go to why not having an example of a generalized, of more So at least one prosecution under the 1986 statute. Why do you think the history from 86 to currently shouldn't be viewed as important? It's not relevant that the government has chosen not to file actual prosecutions of protected speech. That's never been required by this court for First Amendment overbreadth analysis. Again, for good reason, because a law, if it's facially reaching protected speech, does not become more or less constitutional depending on the government's prosecutorial choices. It's also relevant, however, that the government has ways of chilling speech simply by having the law on the books without filing actual prosecution. So, for example, when it opens investigations into people and invokes Section 1324, as happened with Customs. With the U.S. Customs and Border Protection. Yes. And Congress did subpoenas, too. That is correct. And also when it asked cities and states to certify compliance, which Section 1324 to receive federal funding, which, of course, could chill those city and state officials from even coming close to the line of violating the encouragement provision for fear of losing that funding. So there are many aspects beyond simple prosecutions that can chill speech. And the government has certainly used some of those tools in the last five years, even. Thank you. Justice Kagan, Justice Gorsuch, Justice Barrett, Justice Jackson. Just asking, one thing you said was curious to me, that aid and abet and solicitation have different elements. And so what is, then, the implication of the government saying, we look at the statute, it says encourage or induce, you should read that to mean aid and abet or solicitation. I guess that carries with it the element, but is your point that the person who is being convicted or prosecuted under this statute is not going to really know what it is that the government needs to prove in order to establish their liability? That is correct, Justice Jackson. The government hasn't specifically delineated which one would apply in any particular case. It simply says both, but there are different elements to them. That's why Congress has two separate provisions, 18 U.S.C. 373, which is a solicitation provision, and 18 U.S.C. subsection 2, which is an aiding and abetting provision. It is not a First Amendment argument, but it's something problematic, I think, perhaps, about the government's intention of importing both of those concepts wordlessly, silently, into this statute. It goes to congressional intent and what the text says. So Congress has, at various times, used induce along with solicit, as it did in 373. At other times, it used induce along with aid and abet, as it did in subsection 2. Now, the government doesn't explain here why Congress would not have used aiding and abetting and solicitation along with induce when it previously has used induce with those other verbs, and it also doesn't explain why Congress would have mashed up both concepts of solicitation and aiding and abetting in one statute when they have different elements. Thank you. Thank you, counsel. Rebuttal, Mr. Fletcher? Thank you, Mr. Chief Justice. I'd just like to say a word about what the statute means, a word about this civil-criminal distinction, and then close with a word or two about overbreadth. So first of all, about what the statute means, I understand their position to be that until 1952, this was a permissible statute because it had other words in it, but in 1952, Congress turned it into a prohibition on speech. I think that's a pretty extraordinary thing for Congress to have done, and the court should demand a pretty extraordinary showing before assuming that Congress did it. And I just haven't heard such a showing made. What I've heard is Congress took out some words, and that's true, but the words it left in had the same meaning, and the words it left in were the words this court had just used to summarize the previous statute. I heard that it took out the mens rea requirement in 1986, but that's not quite right. It tailored the mens rea that the offender has to know about the noncitizen's status, knowing or in reckless disregard, but it left in the words induce or encourage, and those are words that we think inherently carry a mens rea requirement. That's what Judge Hand said in Peone when he was interpreting the words of 18 U.S.C. 2, words like induce, aid, and abet carry an implication of purpose. We think they still carry that implication here. And finally, I heard that there's no other statute that looks like this, and that's just not quite right. You know, the provision of the National Labor Relations Act that was at issue in the electrical workers case that we'd cite at page 32 of our brief prohibited inducing or encouraging a secondary boycott, and this court upheld that against a constitutional challenge. The Mann Act, 18 U.S.C. 2422A, prohibits persuading, inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prostitution. These are, this is not an unusual way to convey these ideas. Now I'd like to turn to the civil or criminal distinction, which I understand to be their fallback argument, essentially to say that even if you construe the statute the way we construe it, they still think it's overbroad because it covers soliciting or facilitating civil violations. As Justice Gorsuch said, I think there's a real question whether even if they're right that there's constitutional questions about soliciting or facilitating civil conduct, whether that meets the high threshold for overbroad. But I think more fundamentally, they're not right about that. This court has said in cases like Pittsburgh Press and Kazam and Williams that soliciting or inducing illegal activities, even if they're only civilly illegal, are not protected by the First Amendment. And I don't really hear them to be contesting that and said they don't want a special rule. They want to say it's okay to civilly regulate that kind of solicitation and facilitation, but you can't criminally punish it. And that sort of mismatch is just not something that I know of any analog in this court's First Amendment jurisprudence. What this court has always said before is that there are certain categories of speech that are unprotected, and we think this is one of them. Now I take the point that it's unusual to punish the speech or the conduct that solicits or facilitates underlying activity more stiffly than the activity. But that's not a First Amendment rule. That's a legislative judgment about culpability. Usually we think that people who solicit or facilitate unlawful activity share the same culpability as the person who commits that activity. But not always, as Justice Alito and I discussed, and not here. And the judgment that Congress made here is that when someone solicits or facilitates immigration violations, they are deserving of more punishment than the noncitizens who are already subject to removal. We think that's a reasonable judgment. And within the contours of that judgment, I think it's important to emphasize that Congress treated speech and conduct exactly the same. Whether solicitation or facilitation takes the form of speech or takes the form of conduct, this statute treats it identically. And so I don't think it has the effect of treating speech worse than conduct that my colleague describes. Finally, just to say a word about overbreadth, you know, we've talked about the difficulties of overbreadth analysis, what an extraordinary thing it is, how cautious the court has been about it. And I think it's just worth underscoring all of the different ways in which Respondent and the Ninth Circuit are trying to stretch overbreadth doctrine. This court has said that limiting constructions are especially important in overbreadth cases, but they ask you to bypass a limiting construction. The court has said that we are realistic danger of prosecution, but they're asking you to find a statute overbroad, even though we don't have any history of either prosecution or of chilling. And the court said in Hicks that rarely, if ever, will a statute be overbroad when it aims at conduct and not primarily at speech or at inherently expressive conduct. But this is a statute that we know from 70 years aims primarily at conduct, even if you thought it also may sweep in some speech. It would really be extraordinary, I think, to say that the statute can't be used to prosecute schemes like Mr. Hansen's and all of the other schemes that it has been used to prosecute over the last 70 years. We'd ask the court to reverse. Thank you, counsel. The case is submitted.